**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION**

**RICHARD S. KUMPF**                                            **PLAINTIFF**

**v.**                                **CIVIL ACTION NO.: 3:24-CV-00029-DMB-RP**

**SAFECO INSURANCE COMPANY OF
AMERICA, AMERICAN ECONOMY
INSURANCE COMPANY, and RSC INSURANCE
BROKERAGE, INC.**                                   **DEFENDANT**

---

**FIRST AMENDED COMPLAINT**

---

**JURY TRIAL DEMANDED**

Plaintiff Richard S. Kumpf ("Mr. Kumpf"), individually and on behalf of his wife, Winnifred Kumpf, brings the following Complaint against Safeco Insurance Company of America ("Safeco"),[1] American Economy Insurance Company ("American Economy"), and, alternatively, against RSC Insurance Brokerage, Inc. ("Risk Strategies"), stating as follows:

**NATURE OF THE CASE**

1.       This action concerns significant damage to Mr. Kumpf's home located in Oxford, Mississippi's South Lamar Historic District, at 304 S 5th Street, Oxford, Mississippi 38655 (the "Property"), caused by an unprecedented freeze during the week of Christmas in 2022, and Safeco's wrongful denial of coverage of Mr. Kumpf's claim for insurance coverage (the "Claim") under the applicable Policy No. OY8702699 (the "Policy").

---

[1] Based on representations of Safeco's counsel, American Economy is wholly owned by Safeco Corporation (which also wholly owns Defendant Safeco) and issued the subject Policy. Because discovery has not yet been completed, it is unclear at this time which actions relevant to this litigation were taken by Safeco and which were taken by American Economy, or both. Therefore, unless otherwise stated, any reference throughout this litigation, in pleadings, briefs, or otherwise, to Safeco encompasses American Economy and *vice versa*.

2. Despite knowingly underwriting and insuring the Property as a secondary home, Safeco denied coverage, over three months after the loss, based solely on an exclusion in the Policy that applies to damage caused by frozen plumbing when a home is "vacant" or "unoccupied."

3. Safeco maintained its denial even after learning that the house had day-to-day occupants for the better part of ten years, and, even when it was not occupied daily, Mr. Kumpf or members of his family visited the home on a regular basis.

4. The Policy does not define the terms "vacant" or "unoccupied."

5. Safeco's denial seeks to redefine the plain meaning of "vacant" or "unoccupied" under the Policy.

6. Safeco, for over three months without rendering a coverage decision and while taking steps indicating that coverage would be forthcoming, allowed the damage to fester and develop mold that would eventually consume the Property.

7. Throughout the investigation and assessment of the Claim, Safeco never provided Mr. Kumpf with an indication that it reserved its right to deny the Claim.

8. Mr. Kumpf and others involved in the remediation of the Property operated under the reasonable belief that Safeco would handle the mitigation and remediation of the Property.

9. At Safeco's direction, Mr. Kumpf's contractor, Cyrus Barcus, engaged Blue Note Management, LLC ("ServPro") to remediate and mitigate the damage to the Property.

10. Safeco, from the start, communicated directly with ServPro and directed ServPro with respect to the remediation efforts.

11. Despite evident mold growth in the home—a result of Safeco's delay in directing aggressive remediation of the Property—and contrary to Mr. Kumpf's and/or Mr. Barcus' instructions, Safeco did not instruct ServPro to remove the walls and eradicate the mold growth.

2

12.     Then, when Safeco decided it would deny coverage, Safeco instructed ServPro to refrain from doing any further remediation at the Property.

13.     Now, what would have been repairable damage, has become a near total loss of the home.

14.     The mold continued to grow on and inside the water-logged walls and floors of the Property.

15.     The kitchen, dining room, living room, one bedroom, and one bathroom are all ruined.

16.     The walls, floors, ceilings, cabinets, and countertops have been demolished and will have to be replaced.

17.     The combination of the freeze damage and resulting mold required Mr. Kumpf to have walls and ceilings removed and replaced.

18.     The Property's location in a historical district in Oxford also caused Mr. Kumpf to incur additional expense, associated with the repair and remediation due to the loss.

19.     Safeco's acts and omissions constitute bad faith and led to extreme property damage and losses in excess of $500,000.00 that could have been avoided if Safeco had acted in accordance with its contractual and other legal obligations.

20.     In the alternative, if Mr. Kumpf is not made completely whole under the Policy in any way, Defendant Risk Strategies is liable to Mr. Kumpf for his damages.

21.     Mr. Kumpf and Risk Strategies have enjoyed a decade-plus long business relationship.

22.     During that time, Mr. Kumpf has reasonably relied on Risk Strategies to advise him and purchase insurance coverage for many properties owned or managed by Mr. Kumpf,

3

specifically including the subject Oxford Property and with actual knowledge of Mr. Kumpf's intention to use that Property as a second home.

23.     Risk Strategies originally procured the insurance on the Property in 2012.

24.      Mr. Kumpf expected, and Risk Strategies was obligated to adequately insure the Property through the date of the loss in December 2022.

25.     Mr. Kumpf's expectation included that the Oxford Property would be fully and adequately insured against the risk of loss or damage from a freeze like that experienced in December 2022.

26.     In November 2022, Risk Strategies unilaterally elected to move Mr. Kumpf's coverage on the Property to a new carrier and under a new policy.

27.     The Property was previously insured by Chubb Insurance Solutions Agency, Inc. ("Chubb"); Chubb, however, terminated insurance on the Property after ten years.

28.     Ultimately, Risk Strategies purchased the Policy without adequately disclosing to Mr. Kumpf that it contained new exclusions, including but not limited to the exclusion upon which Safeco now relies to deny coverage.

29.     Risk Strategies procured the Policy without informing Mr. Kumpf that the new Policy's coverage limit was $500,000 lower than the previous Chubb policy.

30.     The decision to change insurers and change coverage for the Property did not involve Mr. Kumpf.

31.      Mr. Kumpf did not review the application for coverage, let alone sign it, until after the loss and submission of the Claim.

32.     The first time Mr. Kumpf saw the application for the Policy occurred two weeks after the submission of the Claim, when a Risk Strategies representative requested, per Safeco's

request, Mr. Kumpf's backdated signature on the application or risk losing coverage under the Policy altogether.

33. When Risk Strategies completed the application, it incorrectly entered information regarding the Property including the status of the Property's air conditioning and heating system— information that Mr. Kumpf had already accurately conveyed to Risk Strategies.

34. Risk Strategies failed to offer Mr. Kumpf any assistance throughout the investigation and assessment of the Claim.

35. If coverage does not exist under the Policy, then Risk Strategies' negligence in the procurement and maintenance of the Policy caused significant damage to Mr. Kumpf.

36. To the extent that Mr. Kumpf's damage is not wholly covered under the Policy, Risk Strategies' failure to procure insurance which would provide complete coverage for Mr. Kumpf's insurance needs resulted in significant damage to Mr. Kumpf in excess of $500,000.



## PARTIES

37.     Plaintiff Richard Kumpf is a resident of Dallas, Texas.

38.     Defendant Safeco is a New Hampshire corporation with its principal place of business in Seattle, Washington. Safeco may be served with process via United States Corporation Company, 109 Executive Drive, Suite 3, Madison, Mississippi 39110.

39.     Defendant American Economy is an Indiana corporation with its principal place of business in Boston, Massachusetts. American Economy may be served with process via Corporation Service Company, 135 North Pennsylvania Street, Suite 1610, Indianapolis, Indiana 46204.

40.     Defendant Risk Strategies is a Delaware corporation with its principal place of business in Boston, Massachusetts. Risk Strategies may be served with process via Corporation Service Company, 109 Executive Drive, Suite 3, Madison, Mississippi 39110.

## JURISDICTION AND VENUE

41.     This Court has personal jurisdiction over Defendants Safeco, American Economy, and Risk Strategies under Mississippi's long-arm statute because they are conducting business in the state of Mississippi and have entered into and purported to perform contracts for services regarding real property located in Lafayette County, Mississippi.

42.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the defendants and Mr. Kumpf are residents of different states and the amount in controversy exceeds $75,000.

43.     Venue is proper in this judicial district because "a substantial part of the property that is the subject of the action is situated" in Lafayette County, Mississippi. *See* 28 U.S.C. § 1391(b)(2).

6

## STATEMENT OF FACTS

*Risk Strategies' Procurement of the Policy*

44.     Risk Strategies is an insurance brokerage firm which procures insurance for its clients.

45.     Risk Strategies assisted Mr. Kumpf for numerous years in acquiring insurance policies—including the Policy that covers Mr. Kumpf's Claim at issue in this case.

46.     Risk Strategies undertook to provide Mr. Kumpf advice concerning his insurance needs with its knowledge, expertise, and experience in the insurance industry and boasted to Mr. Kumpf about its comprehensive knowledge about and attention to Mr. Kumpf's unique insurance needs.

47.     Risk Strategies procured insurance for Mr. Kumpf on the Property for ten years, all the while knowing it was a secondary home.

48.     Then, in November 2022, Risk Strategies changed the carrier of Mr. Kumpf's home insurance on the Property.

49.     Risk Strategies completed the application for the new Policy without Mr. Kumpf's involvement.

50.     Mr. Kumpf never saw the application until *after* Mr. Kumpf submitted his claim in December 2022.

51.     Risk Strategies procured the Policy without providing Mr. Kumpf with material information concerning the Policy—including the amount of coverage, which was $500,000 lower than the previous Chubb policy.

52.     The new Policy contained exclusions which the Chubb policy did not.

53.     Risk Strategies never informed or advised Mr. Kumpf concerning these new exclusions.

54.     Risk Strategies also entered inaccurate information on the insurance policy application, including, but not limited to, the status of the central heating and cooling system at the Property—information which Mr. Kumpf had previously and accurately conveyed to Risk Strategies.

55.     The Policy provides home insurance coverage for the Property for the policy period of November 5, 2022 – November 5, 2023.

56.     The Policy provides multiple coverages, including, but not limited to, building damage coverage for direct physical loss of or damage to real and personal property at the Property. A true and correct copy of the Policy is attached to this Complaint as Exhibit "A".

57.     Risk Strategies, when procuring the Policy, had long known Mr. Kumpf's intended use of the Property and Mr. Kumpf's insurance needs regarding the home.

*The 2022 Claim*

58.     As a result of the ice storm that swept through Mississippi during the week of Christmas in December 2022, Mr. Kumpf incurred extensive losses at the Property on or about December 27, 2022, when a pipe froze and burst causing approximately 28,000 gallons of water to enter the house.

59.     Mr. Kumpf timely filed a Claim with Safeco under the Policy, on or about December 29, 2022, seeking coverage from Safeco for those losses.

60.     Mr. Kumpf repeatedly made Safeco aware of his urgent need for a coverage decision.

61.     On or about January 13, 2023, Mr. Kumpf emailed Safeco's field adjuster, stating: "My concern is the only way to dry out water damage and remove potential mold is to remove the walls, ceilings, and floors impacted."

62.     Rather than respond with immediate action, Safeco delayed its coverage decision for over three months.

63.     In all that time, Safeco only conducted limited visits to the Property and limited interviews of Mr. Kumpf.

64.     That interview focused, not on the facts of the loss, but rather on the facts concerning Mr. Kumpf's use of the home.

65.     Safeco was more concerned with whether the house was occupied, who occupied it, and the dates of such occupancy, than it was with providing swift and equitable coverage as required under the Policy.

66.     Finally, more than *three months after* Mr. Kumpf tendered the Claim, Safeco provided notice of its decision to deny the Claim. A true and correct copy of Safeco's April 4, 2023 coverage denial letter is attached as Exhibit "B".

67.     Mr. Kumpf responded to Safeco's denial letter requesting reconsideration of Safeco's incorrect and inequitable coverage decision. A true and correct copy of Mr. Kumpf's May 5, 2023 response letter is attached as Exhibit "C".

68.     Safeco doubled down—Safeco's counsel responded in a letter claiming that the law supports Safeco's interpretation of the vacancy exclusion. A true and correct copy of Safeco's June 22, 2023 letter is attached as Exhibit "D".

69.     Mr. Kumpf[2] contracted with Safeco for a home insurance policy which he reasonably expected would provide insurance coverage for unexpected accidental losses to his historic home and his personal property within.

70.     The plain language of the Policy provided such coverage.

71.     The Policy states in relevant part:

---

### INSURING AGREEMENT

In reliance on the information you have given us, we will pay claims and provide coverage as described in this policy if you pay your premiums when due, comply with all applicable provisions outlined in this policy, and inform us of any change in title, use, or occupancy of the *residence premises*.

This policy applies only to losses occurring during the policy period.

---

Exhibit A, at 1.

72.     Mr. Kumpf paid all premiums due under the Policy and otherwise complied with all applicable provisions of the Policy.

73.     Safeco knew or should have known the nature and intended use of the Property because Mr. Kumpf informed Risk Strategies of the nature of the Property, and Risk Strategies completed the application and maintained the Policy.

74.     Risk Strategies' knowledge regarding Mr. Kumpf's intended use of the Property was imputed on Safeco, and Safeco insured the Property as a secondary home.

75.     The Policy provided coverage for losses such as the one Mr. Kumpf incurred at the Property. The Policy states in relevant part:

---

**BUILDING PROPERTY LOSSES WE COVER**

We cover accidental direct physical loss to property described in **Building Property We Cover** except as limited or excluded.

---

[2] As noted above, Risk Strategies procured the Policy without Mr. Kumpf's knowledge or involvement.

Exhibit A, at 4.

*** 

> **PERSONAL PROPERTY WE COVER**
> **COVERAGE C — PERSONAL PROPERTY**
> 1.   Personal property owned or used by any *insured* is covered while it is anywhere in the world.

Exhibit A, at 7.

76.     Mr. Kumpf experienced an accidental direct physical loss at the insured location during the policy period, on or about December 27, 2022.

77.     Nonetheless, Safeco denied coverage.

78.     The sole reason Safeco offered for the denial of coverage was an exclusion in the Policy for damages caused by the freezing of plumbing in the house while the house sits "vacant" or "unoccupied."

79.     The policy states in relevant part:

> **BUILDING PROPERTY LOSSES WE DO NOT COVER**
> We do not cover loss caused directly or indirectly by any of the following excluded perils.

***

> 1.   Freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system, or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing, while the dwelling is vacant, unoccupied or under construction, including being newly built, remodeled, reconstructed, renovated or repaired. This provision does not apply if you have used reasonable care to:
>    a.   maintain heat in the building; or
>    b.   shut off the water supply and drain the system and appliances of water.

Exhibit A, at 4.

11

80.     Despite Safeco's coverage determination, the Property was far from vacant or unoccupied.

81.     The house had been occupied by Mr. Kumpf's children and their roommates for the previous ten years—from the time Mr. Kumpf purchased it in 2012 until August 2022—and had been regularly visited in the four months since the last tenant left.

82.     Safeco ignored the norms of the regular and ordinary use of a second home, instead choosing to deny coverage because Mr. Kumpf's second home was without a day-to-day occupant for four months out of Mr. Kumpf's decade-long ownership of the home.

83.     Moreover, the house was, in all respects, maintained as an occupied dwelling.

84.     All necessary utilities—electricity, gas, cable, and internet—remained in service.

85.     Mr. Kumpf fully furnished the home and maintained operational appliances in the home including an oven, a stovetop, a refrigerator, a freezer, a microwave, a dishwasher, and a washer and dryer.

86.     Mr. Kumpf kept the bathrooms stocked with toiletries and cosmetics and the kitchen stocked with all the tools and dishes necessary to cook and dine in the home.

87.     During the times that the house did not have day-to-day occupants, Mr. Kumpf instructed a local plumber to periodically visit the Property to respond to Mr. Kumpf's maintenance requests.

88.     Additionally, Mr. Kumpf employed a housekeeper to visit the house as necessary.

89.     Mr. Kumpf, therefore, used reasonable care to maintain heat in the Property and/or shut off water supply and drain the system at the time when the freeze occurred (during the week of Christmas), given historic nature of the weather event.

12

90.     Despite these facts, the evidence will show that Safeco never intended to pay Mr. Kumpf's Claim.

91.     Rather, Safeco sought to stretch the plain language of the Policy until it could fit a coverage denial in its terms.

92.     Risk strategies, in its part, failed to meaningfully assist Mr. Kumpf once the Claim had been filed.

93.     Mr. Kumpf had been one of Risk Strategies' clients for the better part of a decade.

94.      Rather than advocate for coverage on behalf of Mr. Kumpf, Risk Strategies took no action in support of Mr. Kumpf.

95.     Instead, Risk Strategies shut down communications between Mr. Kumpf and his then-existing representative, Stacy Hume.

96.     Upon information and belief, shortly after the Claim was filed and all communications between Mr. Kumpf and Stacy Hume were severed, Risk Strategies fired Ms. Hume.

*Remediation and Mitigation of the Freeze Damage*

97.     Safeco's delay and denial has turned what could have been a manageable residential insurance claim into the potential total loss of a historic home which has stood in Oxford, Mississippi for almost 140 years.

98.     While Safeco built a coverage denial and engaged in post-claim underwriting, the interior of the Property developed mold and mildew, and the damage only worsened.

99.     Remediation efforts at the house were stifled by Safeco's delayed decision on, and ultimate denial of, coverage.

100.    Safeco initiated contact with, hired, and directed the subcontractors employed to conduct the assessment, mitigation, and remediation of the damage at the Property.

101.    Because Safeco never provided Mr. Kumpf with a reservation of rights letter, Mr. Kumpf and others participating in the remediation of the Property believed that Safeco was handling and directing the remediation of the damage to the Property.

102.    Safeco identified ServPro as the remediation company that should be hired to perform work at the Property.

103.    Safeco directed Mr. Kumpf's local contractor, Cyrus Barcus, to contact ServPro to begin remediation at the Property.

104.    Safeco approved the hire of ServPro in its communications to Mr. Kumpf and/or Mr. Barcus.

105.    Cyrus Barcus signed a contract with ServPro at Safeco's direction, of which Mr. Kumpf would receive the benefit, as ServPro was instructed to remediate the damage at Mr. Kumpf's Property.

106.    Mr. Kumpf was contemplated as receiving the benefit of the contract as the owner of the Property subject to the remediation contract.

107.    Safeco communicated with and unilaterally directed ServPro with respect to these remediation efforts.

108.    Safeco organized the initial meeting at the Property between ServPro, Safeco, and Mr. Kumpf's contractor.

109.    Prior to Safeco's decision on coverage, Safeco received all ServPro's invoices concerning the remediation of the Property and directly received updates concerning the remediation effort.

110.     At all times relevant to the remediation of the Property, Safeco directed the actions that ServPro took in repairing the damage to the home.

111.     Upon information and belief, Safeco instructed ServPro to limit its remediation efforts to the use of fans and/or dehumidifiers because Safeco intended to deny the Claim.

112.     Safeco instructed ServPro to refrain from removing the walls in the Property because it expected to deny Mr. Kumpf's Claim.

113.     As a result of Safeco's dilatory and negligent direction of the remediation efforts, the house sustained substantial further damage.

114.     Safeco refused to pay ServPro for the remediation worked it performed despite the fact that Safeco paid other contractors it hired to work on the Property, such as the plumber and the structural engineer.

115.     Defendant Safeco's grossly negligent failure to uphold its contractual and common law obligations owed to Mr. Kumpf has caused the near complete loss of Mr. Kumpf's second home in Oxford.

116.     Alternatively, if the Court finds Safeco did not owe coverage under the Policy, Defendant Risk Strategies' failure to procure coverage which protected Mr. Kumpf from losses such as this one resulted in substantial damage to Mr. Kumpf's home.

## COUNT I—DECLARATORY JUDGMENT
## <u>AGAINST SAFECO</u>

117.     Mr. Kumpf incorporates and re-alleges all preceding paragraphs as if fully set forth herein.

118.      The Policy is a binding contract under which Safeco was paid premiums in exchange for its contractual agreement to pay Mr. Kumpf's losses to the Property for claims covered under the Policy.

119.     On or about December 27, 2022, Mr. Kumpf experienced a direct physical loss and damage to the Property which triggered the physical damage and personal property coverages under the Policy.

120.     Safeco denied coverage for Mr. Kumpf's Claim under the Policy, including Mr. Kumpf's physical damage, personal property loss, and costs under the remediation contract with ServPro.

121.     An actual controversy exists between Mr. Kumpf and Safeco regarding the rights, duties, and liabilities under the Policy, and Safeco's denial of coverage for the Claim. The controversy is of sufficient immediacy and magnitude to justify declaratory relief.

122.     Pursuant to 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57, Mr. Kumpf seeks a judicial determination of his rights and Safeco's duties under the Policy, and that Safeco is obligated, pursuant to the terms of the Policy, to indemnify Mr. Kumpf for all past and future losses relating to the Claim at issue here.

123.     There is no applicable exclusion that would allow Safeco to avoid its Policy obligations to cover the Claim.

124.     Mr. Kumpf also requests a declaratory judgment that Safeco has waived and is estopped from asserting any coverage defenses given Safeco's deployment of ServPro, a plumber, and a structural engineer and its payment for the services of such plumber and engineer. *See* Count IV.

125.     A binding judgment concluding the controversy may be entered by the Court.

### COUNT II—BREACH OF CONTRACT
### <u>AGAINST SAFECO</u>

126.     Mr. Kumpf incorporates and re-alleges all preceding paragraphs as if fully set forth herein.

127. The Policy is a valid contract between Mr. Kumpf and Safeco.

128. At all relevant times, Mr. Kumpf paid all premiums due under the Policy in a timely manner and otherwise complied with all conditions and requirements placed upon him under the Policy.

129. On or about December 27, 2022, Mr. Kumpf experienced an accidental direct physical loss to the insured Property when an ice storm caused a pipe in the home to freeze and burst.

130. Mr. Kumpf timely tendered the Claim to Safeco for this loss.

131. This unexpected loss is the type of loss contemplated under the plain language of the Policy for which Mr. Kumpf reasonably expected coverage.

132. Contrary to and in breach of the Policy, Safeco denied coverage of the Claim, asserting the inapplicable vacancy and occupancy exclusion despite insuring the Property as a secondary home and knowing that the Property had been constantly occupied for the better part of a decade, contained all items and furnishings necessary for occupancy, all necessary utilities remained in service at the home, and the home was regularly visited by Mr. Kumpf and his family, friends, housekeeper, plumber, and contractor.

133. Safeco erroneously interpreted the vacancy exclusion to require a person's presence at the Property on the date of the loss.

134. Safeco's interpretation fails to comport with the ordinary person's understanding of the Policy and Mr. Kumpf's reasonable expectation of coverage and, if adopted, would render Mr. Kumpf's home insurance Policy on his secondary home illusory.

135. The Policy fails to define the terms "vacancy" or "occupancy", and, as such the exclusion is ambiguous.

17

136.     Safeco breached the contract by construing the ambiguous vacancy exclusion in a manner that would allow Safeco to deny coverage of the Claim.

137.     Neither the vacancy exclusion nor any other exclusion contained in the Policy can reasonably be interpreted to deny Mr. Kumpf coverage for the loss he incurred at the Property.

138.     Safeco knew that the Property was not Mr. Kumpf's primary residence because Mr. Kumpf made Risk Strategies—the entity entrusted with procuring insurance for the Property— aware of the nature of the Property and Mr. Kumpf's intended use of the home.

139.     Risk Strategies correspondingly made Safeco aware of this fact via the online application for coverage Risk Strategies submitted to Safeco. Such knowledge of Risk Strategies was imputed on and is binding on Safeco.

140.     Safeco breached the Policy by failing to provide Mr. Kumpf coverage which was rightfully due under its plain language.

141.     Safeco's breach of the Policy directly and proximately caused Mr. Kumpf to suffer damages in an amount in excess of $500,000.00.

## COUNT III—EQUITABLE ESTOPPEL
## AGAINST SAFECO

142.     Mr. Kumpf incorporates and re-alleges all preceding paragraphs as if fully set forth herein.

143.     Safeco represented, by instructing Mr. Kumpf to, and being directly involved with, the hiring of ServPro to mitigate loss and damage at Mr. Kumpf's Property, that Safeco would cover the costs of the services ServPro would provide and further cover Mr. Kumpf's Claim.

144.     Safeco represented, by dispatching a plumber and structural engineer and paying these individuals, that Safeco would cover the costs and services related to Mr. Kumpf's Claim and further cover Mr. Kumpf's Claim.

18

145.     Safeco never provided Mr. Kumpf with a reservation of rights letter indicating it may deny the Claim or abandon direction of the mitigation of the damage to the Property.

146.     Relying on Safeco's representations and instructions, Cyrus Barcus signed the contract with ServPro for Mr. Kumpf's intended benefit.

147.     Had Mr. Kumpf known that (i) Safeco would not abide by the terms of the Policy and refuse to cover Mr. Kumpf's insurance Claim, including ServPro's assessed costs; and (ii) Safeco would instruct ServPro to not perform certain mitigation services, such as opening the walls to mitigate the spread of mold, because Safeco would be denying the Claim; Mr. Kumpf would not have relied on the contract for the remediation of the Property or taken other actions he took.

148.     Mr. Kumpf materially changed his position in reliance on Safeco's representations.

149.     Safeco is equitably estopped from now denying Mr. Kumpf's insurance Claim.

150.     Mr. Kumpf requests this relief and all other relief ancillary to and in addition to the requested relief.

## COUNT IV—WAIVER
## AGAINST SAFECO

151.     Mr. Kumpf incorporates and re-alleges the preceding paragraphs as if fully set forth herein.

152.     Safeco, under the Policy, was entitled to inspect the Property prior to issuing the Policy to Mr. Kumpf.

153.      Safeco relinquished this known right by never visiting the Property prior to the loss.

154.     As a result, Safeco has waived any contention or position that the Property was vacant or unoccupied at the time of the loss, that any condition of the Property at any such time supports a coverage denial, or that Mr. Kumpf, the Property occupants, or anyone at Mr. Kumpf's

direction failed to act reasonably, under all the circumstances *(e.g.,* historically low temperatures and during the Christmas holiday), with their efforts to maintain heat or drain water from the pipes at the Property.

## COUNT V—TORTIOUS INTERFERENCE WITH CONTRACT
## AGAINST SAFECO

155.    Mr. Kumpf incorporates and re-alleges the preceding paragraphs as if fully set forth herein.

156.    The agreement between Cyrus Barcus and ServPro constitutes a valid and enforceable contract.

157.    Mr. Kumpf is an intended third-party beneficiary of the contract.

158.    The contract was entered into for Mr. Kumpf's benefit, namely, that the Property's damage would be remediated and/or mitigated.

159.    Mr. Kumpf is expressly contemplated within the terms of the contract as the owner of the Property.

160.    Mr. Kumpf's rights under the contract come from the terms of the contract itself as the contract contemplates the remediation of Mr. Kumpf's house in Oxford.

161.    Safeco, who had actual knowledge of the contract, intentionally interfered with that contract by initially inducing ServPro to perform with the belief that Safeco would pay ServPro for its services, by unreasonably delaying its coverage decision while ServPro continued performing under that agreement, and then by denying coverage on Mr. Kumpf's Claim, resulting in ServPro ceasing its performance of the contract.

162.    Mr. Kumpf has been damaged as a direct and proximate result thereof.

163.    Mr. Kumpf is therefore entitled to actual damages, consequential damages, exemplary damages, pre- and post-judgment interest, costs of court, and injunctive relief.

## COUNT VI—NEGLIGENT CLAIM HANDLING
## AGAINST SAFECO

164.    Mr. Kumpf incorporates and re-alleges all preceding paragraphs as if fully set forth herein.

165.    Safeco, with a view toward compensation, undertook to provide insurance coverage to Mr. Kumpf in accordance with the terms of the Policy.

166.    In so doing, Safeco owed duties to Mr. Kumpf which Safeco was expected to undertake reasonably.

167.    Safeco breached its duty by conducting a biased and outcome-oriented investigation of the Claim, a practice commonly referred to as post-claim underwriting.

168.    In the three months the Claim was purportedly under investigation, Safeco conducted limited interviews of Mr. Kumpf and limited visits to the Property.

169.    During the investigation, Safeco disregarded the Policy language, opting to spend its time looking for reasons to deny coverage.

170.    Safeco breached its duty by failing to take immediate action to mitigate damage to the Property.

171.    Safeco failed to properly engage with a remediation company in a timely manner.

172.    Once Safeco did engage with a remediation company, it failed to direct that company to take the necessary steps to slow or stop the damage to the Property.

173.    Safeco breached its duty by adopting an unreasonable interpretation of the Policy that ignored the plain meaning of the Policy language.

174.    Safeco knew that the Property was Mr. Kumpf's secondary home, as that fact was plainly indicated on the application Risk Strategies submitted for coverage.

175. Rather than take that into account in its coverage decision, Safeco applied an inapplicable exclusion to wrongfully deny coverage.

176. Safeco's breach of its duties owed has proximately caused damage to Mr. Kumpf in an amount in excess of $500,000.00.

**COUNT VII—GROSS NEGLIGENCE SUFFICIENT TO JUSTIFY PUNITIVE DAMAGES**
**AGAINST SAFECO**

177. Mr. Kumpf incorporates and re-alleges all preceding paragraphs as if fully set forth herein.

178. Safeco, with a view toward compensation, undertook to provide insurance coverage to Mr. Kumpf in accordance with the terms of the Policy.

179. In so doing, Safeco owed duties to Mr. Kumpf including the duty to treat Mr. Kumpf honestly and fairly through the claims adjustment process pursuant to the Policyholder's Bill of Rights, attached to the Policy, and Mississippi Code §§ 83-5-29 *et seq.*

180. Safeco was expected to undertake its duties owed in a reasonable manner.

181. Safeco breached its duties through gross negligence by intentionally or recklessly ignoring evidence that supported coverage for the Claim.

182. Safeco willfully, wantonly, and recklessly conducted its investigation of the Claim in a manner designed to justify a denial of coverage.

183. Safeco further breached its duties owed to Mr. Kumpf by intentionally interpreting the Policy to exclude coverage for Mr. Kumpf's damage in derogation of the plain meaning and reasonable interpretation of the Policy language.

184. Safeco's intentional or reckless breach of its duties owed to Mr. Kumpf caused Mr. Kumpf to sustain significant damages at the Property.

22

185.     Safeco's willful, wanton, or reckless breach of its duties owed to Mr. Kumpf constitutes gross negligence and justifies the award of punitive damages pursuant to Mississippi Code § 11-1-65.

### COUNT VIII—BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING SUFFICIENT TO JUSTIFY EXTRACONTRACTUAL DAMAGES AGAINST SAFECO

186.     Mr. Kumpf incorporates and re-alleges all preceding paragraphs as if fully set forth herein.

187.     Safeco owed a duty of good faith and fair dealing to Mr. Kumpf, including the duty to make a reasonable, good faith coverage decision on its investigation of Mr. Kumpf's Claim for water damage to the Property, and the duty to treat Mr. Kumpf honestly and fairly throughout the claims process pursuant the Policyholder's Bill of Rights, attached to the Policy, and Mississippi Code §§ 83-5-29 *et seq.*

188.     Safeco breached its duties owed by engaging in an outcome-oriented, biased, and inequitable investigation of the Claim.

189.     Safeco intentionally conducted the investigation in a manner it believed would produce an argument for denial of coverage.

190.     Safeco had no legitimate or arguable basis to refuse to pay for the damage to the Property.

191.     Safeco knew, based on Risk Strategies' application for the Policy, that the Property was not Mr. Kumpf's primary residence.

192.     Safeco's denial of coverage on the Policy because a secondary home was not continuously occupied lacks a legitimate basis in reason.

193.     Safeco's acts and omissions constitute a bad faith breach of the Policy.

194.     Safeco's misconduct as outlined in the preceding allegations constitutes a separate and independent tort of bad faith breach of contract.

195.     Safeco's intentional or reckless failure to follow the terms of the Policy, breach of its obligation to act in good faith toward its insured in responding to the Claim, and its refusal to pay the covered amounts due justifies extra-contractual damages, including, but not limited to, consequential damages, attorney's fees, and punitive damages.

**ALTERNATIVE COUNT IX—NEGLIGENCE**
**AGAINST RISK STRATEGIES**

196.     Mr. Kumpf incorporates and re-alleges all preceding paragraphs as if fully set forth herein.

197.     With respect to Defendant Risk Strategies, to the extent that coverage for damage to the Property does not exist under the Policy, Mr. Kumpf alleges that Risk Strategies, with a view toward compensation, undertook to advise Mr. Kumpf regarding his insurance needs, procure insurance coverages for Mr. Kumpf—including procuring the Policy—and handle insurance claims for Mr. Kumpf.

198.     In so doing, Risk Strategies owed duties to Mr. Kumpf, which Risk Strategies was expected to undertake reasonably.

199.     Risk Strategies owed Mr. Kumpf a duty of acting as a reasonable and prudent insurance agent would under the same or similar circumstances.

200.     In the alternative, to the extent that coverage for damage to the Property does not exist under the Policy, Risk Strategies breached these duties by handling the application and maintenance of the Policy in a careless manner.

201.     Risk Strategies did not involve Mr. Kumpf in the application for the Policy.

202.    After the claim was filed, Risk Strategies, at Safeco's direction, sought to back-date the application so as to avoid the consequences of its own negligence.

203.    Further, Risk Strategies then carelessly and/or intentionally filled out the application in a manner that misrepresented the heating and cooling systems on the Property.

204.    In the alternative, Risk Strategies also breached these duties by failing to ensure that the Policy it procured would provide coverage in accordance with Mr. Kumpf's needs—needs which Mr. Kumpf made Risk Strategies aware of well before Risk Strategies procured the Policy.

205.    If no coverage exists, Risk Strategies knew or should have known that the Policy it procured for Mr. Kumpf from Safeco would not provide the coverage Mr. Kumpf required for the Property.

206.    In the alternative, to the extent that coverage for damage to the Property does not exist under the Policy, Risk Strategies further breached duties it owed to Mr. Kumpf by failing to assist Mr. Kumpf in pursuing coverage for the Claim.

207.    Rather than advocate for coverage with Safeco on Mr. Kumpf's behalf, Risk Strategies cut off all communication between Mr. Kumpf and his point of contact at Risk Strategies and terminated the representative who worked with Mr. Kumpf.

208.    To the extent that coverage does not exist under the Policy, Risk Strategies' failure to ensure that it procured a policy which provided adequate coverage for Mr. Kumpf's home and Risk Strategies' careless post-filing conduct proximately caused damage to Mr. Kumpf.

### ALTERNATIVE COUNT X—GROSS NEGLIGENCE SUFFICIENT TO JUSTIFY PUNITIVE AND EXTRACONTRACTUAL DAMAGES AGAINST RISK STRATEGIES

209.    Mr. Kumpf incorporates and re-alleges the preceding paragraphs as if fully set forth herein.

25

210.    With respect to Defendant Risk Strategies, to the extent that coverage for damage to the Property does not exist under the Policy, Mr. Kumpf alleges that Risk Strategies, with a view toward compensation, undertook to advise Mr. Kumpf regarding his insurance needs, procure insurance coverages for Mr. Kumpf—including procuring the Policy—and handle insurance claims for Mr. Kumpf.

211.    In so doing, Risk Strategies owed duties to Mr. Kumpf, which Risk Strategies was expected to undertake reasonably.

212.    Risk Strategies owed Mr. Kumpf a duty of acting as a reasonable and prudent insurance agent would under the same or similar circumstances.

213.    In the alternative, to the extent that coverage for damage to the Property does not exist under the Policy, Risk Strategies breached these duties by willfully, wantonly, or recklessly handling the procurement and maintenance of the Policy.

214.    Risk Strategies procured the Policy with knowledge of Mr. Kumpf's unique insurance needs.

215.    In the alternative, to the extent that coverage for damage to the Property does not exist under the Policy, Risk Strategies intentionally or recklessly breached its duties owed to Mr. Kumpf by failing to procure insurance which would provide coverage in line with Mr. Kumpf's insurance needs.

216.    In the alternative, to the extent that coverage for damage to the Property does not exist under the Policy, Risk Strategies breached its duties owed to Mr. Kumpf by intentionally backdating the application and intentionally or recklessly filling out the application with inaccurate information so as to avoid the consequences of its own negligence.

217.    In the alternative, to the extent that coverage for damage to the Property does not exist under the Policy, Risk Strategies breached its duties owed to Mr. Kumpf by willfully, wantonly or recklessly failing to assist Mr. Kumpf during the investigation and assessment of the Claim.

218.    Risk Strategies' intentional or reckless breach of its duties owed to Mr. Kumpf has caused Mr. Kumpf to suffer significant damages.

219.    Risk Strategies' intentional or reckless breach of its duties owed constitutes gross negligence sufficient to justify an award of costs, attorney's fees, and punitive damages pursuant to Mississippi Code § 11-1-65.

## PRAYER FOR RELIEF

WHEREFORE, Mr. Kumpf demands a jury trial on issues of fact and seek the following relief from this Court:

1.    A declaration that the Policy provides coverage for the Claim and that Safeco has a duty to indemnify Mr. Kumpf for the Claim under the Policy.

2.    Judgment awarding Mr. Kumpf all damages suffered as a result of Safeco's breach of its obligations and bad faith conduct as outlined above in an amount not less than $500,000.00, including but not limited to attorney's fees, costs, punitive damages, and pre- and post-judgment interest in the maximum allowed by law;

3.    In the alternative and to the extent no coverage exists under the Policy or the Policy does not provide complete coverage for Mr. Kumpf's damages, judgment awarding Mr. Kumpf all damages suffered as a result of Risk Strategies' breach of its obligations as outlined above in an amount not less than $500,000.00, including but not limited to attorney's fees, costs, punitive damages, and pre- and post -judgment interest in the maximum allowed by law;

27

4.    Any other relief the Court deems appropriate at law or in equity.

RESPECTFULLY SUBMITTED, this the 30th day of May, 2024.


/s/ *Jason D. Tullos*
J. Alex Purvis (MB No. 100673)
Slates C. Veazey (MB No. 104310)
Jason D. Tullos (MB No. 106703)
BRADLEY ARANT BOULT CUMMINGS LLP
188 East Capitol Street, Suite 1000
Jackson, MS 39201
(601) 948-8000
apurvis@bradley.com
sveazey@bradley.com
jtullos@bradley.com

*Attorneys for Richard Kumpf*
*Plaintiff*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on May 30, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*/s/Jason D. Tullos*
_____