**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**OXFORD DIVISION**

**RICHARD S. KUMPF**                                                    **PLAINTIFF**

**V.**                                                    **NO. 3:24-CV-29-DMB-RP**

**SAFECO INSURANCE COMPANY**
**OF AMERICA; AMERICAN ECONOMY**
**INSURANCE COMPANY; and RSC**
**INSURANCE BROKERAGE, INC.**                                         **DEFENDANTS**

**MEMORANDUM OPINION**

Alleging he was wrongfully denied insurance coverage for damage to his home caused by a freeze-related pipe burst, Richard S. Kumpf sued Safeco Insurance Company of America, RSC Insurance Brokerage, Inc., and American Economy Insurance Company. Kumpf moved for partial summary judgment on his breach of contract claim against Safeco and American, and Safeco and American moved for summary judgment on all claims alleged against them. The Court granted American and Safeco's motion for summary judgment and denied Kumpf's motion for partial summary judgment. This opinion details the reasons for those rulings.

**I**
**Relevant Procedural History**

On May 30, 2024, Richard S. Kumpf filed an amended complaint[1] in the United States District Court for the Northern District of Mississippi against Safeco Insurance Company of America; American Economy Insurance Company; and RSC Insurance Brokerage, Inc., claiming Safeco wrongfully denied his insurance coverage claim for damage to his home "caused by an

---

[1] Kumpf filed his original complaint on February 2, 2024, and filed his amended complaint with leave of the Court. Docs. #1, #45. The amended complaint's introductory paragraph asserts that Kumpf brings this case "individually and on behalf of his wife Winnifred," Doc. #46 at 1, but does not mention or reference Winnifred again.

unprecedented freeze during the week of Christmas in 2022."[2]  Doc. #46 at 1.  The amended complaint contains ten counts: "Count I—Declaratory Judgment Against Safeco;" "Count II—Breach of Contract Against Safeco;" "Count III—Equitable Estoppel Against Safeco;" "Count IV—Waiver Against Safeco;" "Count V—Tortious Interference with Contract Against Safeco;" "Count VI—Negligent Claim Handling Against Safeco;" "Count VII—Gross Negligence Sufficient to Justify Punitive Damages Against Safeco;" "Count VIII—Breach of the Duty of Good Faith and Fair Dealing Sufficient to Justify Extracontractual Damages Against Safeco;" "Alternative Count IX—Negligence Against [RSC];" and "Alternative Count X—Gross Negligence Sufficient to Justify Punitive and Extracontractual Damages Against [RSC]."  Doc. #46 at 15–25.

On December 12, 2024, RSC filed a motion for summary judgment as to the alternative claims against it.  Doc. #163.  On May 16, 2025, Kumpf filed a motion for partial summary judgment, Doc. #263; and American Economy and Safeco together filed a motion for summary judgment as to the claims against them, Doc. #265.  On September 30, after these motions were fully briefed, the Court denied Kumpf's motion for partial summary judgment and granted Safeco and American's motion for summary judgment.[3]  Doc. #316.

## II
## Standard

Under Federal Rule of Civil Procedure 56, "[s]ummary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with

---

[2] According to the amended complaint, "any reference [by Kumpf] throughout this litigation, in pleadings, briefs, or otherwise, to Safeco encompasses American Economy and *vice versa*."  Doc. #46 at 1 n.1 (emphasis in original). According to Safeco and American, "[they] are both part of the Safeco Insurance family of companies, but they are separate legal entities" and "Safeco did not underwrite Kumpf's policy and it was not involved [in] the handling of his claim."  Doc. #266 at 4.

[3] The Court also granted RSC's motion for summary judgment.  Doc. #317.  The reasons for that ruling will be detailed in a separate memorandum opinion.

affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 896 (5th Cir. 2002). "An issue of material fact is genuine if a reasonable jury could return a verdict for the nonmovant." *Nall v. BNSF Ry. Co.*, 917 F.3d 335, 340 (5th Cir. 2019) (internal quotation mark omitted) (quoting *Sandstad*, 309 F.3d at 896).

In reviewing summary judgment evidence, a court "must draw all reasonable inferences in favor of the nonmoving party, and avoid credibility determinations and weighing of the evidence." *Id*. "A party opposing … a summary judgment motion may not rest upon mere allegations contained in the pleadings, but must set forth and support by summary judgment evidence specific facts showing the existence of a genuine issue for trial." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). Rule 56 "mandates the entry of summary judgment … against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Cross-motions for summary judgment "must be considered separately, as each movant bears the burden of establishing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. If there is no genuine issue and one of the parties is entitled to prevail as a matter of law," summary judgment is appropriate. *Shaw Constructors v. ICF Kaiser Eng'rs, Inc.*, 395 F.3d 533, 538–39 (5th Cir. 2004) (footnote omitted).

**III**
**Relevant Factual Background**

In 2012, Richard Kumpf, a resident of Dallas, Texas, purchased property in Oxford, Mississippi, for family use. Doc. #263-1 at PageID 6694; Doc. #263-2 at 1; Doc. #265-3 at PageID 7287, 7289; Doc. #265-4 at 1. Between 2012 and 2022, his four children attended the University of Mississippi and used or inhabited the property at various times. *Id.* After his youngest son

3

graduated in 2019, Kumpf leased the property to non-family members until August 31, 2022. Doc. #263-1 at PageID 6694; Doc. #265-3 at PageID 7287–88.

For a period of time, the property was covered under an insurance policy that RSC Insurance Brokerage, Inc.,[4] obtained from Chubb. Doc. #263-1 at PageID 6705; Doc. #265-3 at PageID 7333–34. However, on September 7, 2022, RSC account executive Stacy Humes e-mailed Kumpf informing him that the Chubb policy would not be renewed. Doc. #263-1 at PageID 6706; Doc. #265-3 at PageID 7338.

On November 5, 2022, a homeowners insurance policy on the property with American Economy Insurance Company ("Safeco Policy"), "a Safeco Company," went into effect.[5] Doc. #265-2 at PageID 7218. The Safeco Policy required a $3,109 premium, which Kumpf paid, and a $5,000 deductible. *Id.* at PageID 7218, 7225. It also provided a dwelling structure coverage limit of $653,000; a detached structure coverage limit of $65,300; and a personal property coverage limit of $326,500. *Id.* at PageID 7225. Of particular relevance here, the Safeco Policy provided that American would not cover building property losses caused directly or indirectly by "[f]reezing of a plumbing … system, or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing, while the dwelling is vacant, unoccupied or under construction …." *Id.* at PageID 7239. But the Safeco Policy specified that "[t]his provision does not apply if you have used reasonable care to: (a) maintain heat in the building; or (b) shut off the water supply and drain the system and appliances of water." *Id.* It further provided, "In reliance on the information [the insured has] given [American], [American] will pay claims and

---

[4] RSC was Kumpf's insurance broker. Doc. #263-1 at PageID 6705.

[5] Kumpf did not sign the application for the Safeco Policy until January 19, 2023. Doc. #263-1 at PageID 6710; Doc. #265-3 at PageID 7352–54. Humes backdated the application for coverage purposes, claiming that Safeco directed her to do so. Doc. #263-1 at PageID 6710–11; Doc. #265-3 at PageID 7354–55.

provide coverage as described in this policy if [the insured pays] premiums when due, compl[ies] with all applicable provisions outlined in this policy, and inform[s American] of any change in title, use, or occupancy of the residence premises." *Id*. at PageID 7236 (emphasis omitted).

As of December 2022, the property was not inhabited but Kumpf, his wife, and a caretaker were periodically visiting and inspecting the property. Doc. #263-1 at PageID 6694; Doc. #265-3 at PageID 7288–90. Before December 27, 2022, Kumpf and his wife had most recently visited the property in October 2022. Doc. #263-1 at PageID 6694; Doc. #265-3 at PageID 7288. The property was furnished with furniture, clothes, food, and personal items, and utilities remained on. Doc. #263-1 at PageID 6694; Doc. #265-3 at PageID 7288–89. There were gas heaters in the living room, the hallway, and the kitchen, and there were space heaters in the upstairs bathroom and bedrooms. Doc. #263-1 at PageID 6695; Doc. #265-3 at PageID 7292–93.

On December 28, 2022, Kumpf contacted Stacy Humes to file a claim, informing her that the day before, a pipe burst in the property's upstairs bathroom due to freezing temperatures, causing water to run for 12 to 24 hours. Doc. #263-12 at PageID 6975–76. At the time, the space heaters were not operating, and only the pilot lights on the gas heaters were in operation.[6] Doc. #263-1 at PageID 6695; Doc. #265-3 at PageID 7293–94.

On January 4, 2023, Kumpf's contractor, Cy Barcus, contracted with ServPro to address the property damage. Doc. #272-5.

On April 4, 2023, American informed Kumpf that his "claim for damages to the home, personal property and any additional living expenses" was denied, citing its findings that the property "was vacant, unoccupied and heat was not being maintained at the time of the pipe burst."

---

[6] The electric bill for the thirty-one-day period during which the pipe burst showed 241 kwh of usage, and the gas bill for the period between November 29 and December 28 showed zero usage. Doc. #263-5 at PageID 6821; Doc. #265-5 at PageID 7445.

Doc. #265-8 at 1, 3.  On October 1, 2024, American sent a notice to Kumpf alerting him of its decision to cease renewal of his policy.  Doc. #275-2.

**IV**
**Kumpf's Motion for Partial Summary Judgment**

In requesting partial summary judgment, Kumpf argued that the policy's vacancy exclusion is ambiguous and must be construed in his favor and, alternatively, Safeco waived its denial of coverage.[7]  Doc. #264 at 15, 23.  Safeco and American responded that the definition of "unoccupied" is unambiguous under Mississippi law; and they did not waive their right to deny Kumpf's claim.[8]  Doc. #279 at 14–25.

**A. Breach of Contract**

**1. Occupancy**

Kumpf argued that the meaning of "unoccupied" is ambiguous as applied to his property based on how Safeco has used the term internally and the lack of a time restriction to define an unoccupied property.  Doc. #264 at 20–22.  Kumpf pointed out that (1) Safeco's 2022 Eligibility Guidelines define "unoccupied" as "[a]ny residence unoccupied for extended periods of time (e.g., 30 or more consecutive days, 4 or more times a year);"[9]  (2) Safeco's 2024 Eligibility Guidelines define "unoccupied" as "[a] property that is furnished but is not being used as a residence

---

[7] Kumpf sought partial summary judgment only on the claims related to coverage—not on the extracontractual claims related to coverage—and indicates that he "will fully brief Safeco's evident post-claim underwriting, mishandling of the claim and remediation of the Property, and gross negligence" "[i]f Safeco chooses to move for summary judgment on [his] extracontractual claims."  Doc. #264 at 6 n.4.  Though Kumpf claimed his motion did not address the extracontractual claims, he seemed to attempt to raise bad faith claims in his descriptions of the claim resolution process.  *See, e.g.*, *id.* at 7–8.  To the extent Kumpf expressly indicated he is not seeking summary judgment on extracontractual claims, such claims were not reviewed under the summary judgment standard.

[8] In their response, Safeco and American stated that "[s]ince [Kumpf's] Motion is based in large part on the same issues raised in [their] Motion for Summary Judgment, including Exhibits A through M, and supporting Memorandum (Docs 265 and 266), the latter documents are adopted and incorporated herein to avoid duplication;" they also relied on the "additional exhibits" identified; and "[f]or the reasons stated in [their] Memorandum and their Memorandum in Support of their Motion for Summary Judgment, [Kumpf's] Motion should be denied."  Doc. #272 at 1–2.

[9] Doc. #264 at 22 n.12; Doc. #263-16 at 11.

6

(unoccupied for extended periods of time such as 30 or more consecutive days, 4 or more times per year," but that "[s]easonal or secondary residences are not considered unoccupied," and define "vacant" as "[a] dwelling or unit which lacks the necessary amenities, adequate furnishings or utilities and services required to sustain normal occupancy;"[10] and (3) Safeco's Training Presentation defines "unoccupied" as "without occupants," "empty," "vacant," and a "[p]roperty classification where it is not occupied by people but can have goods and furniture in it, and defines "vacant" as "having no tenant and devoid of furniture, fixtures, etc. (distinguished from unoccupied); a vacant house," and "a building that does not have any contents or inhabitants."[11] Kumpf claimed these multiple definitions render the definition of "unoccupied" too ambiguous for an insured to be reasonably apprised of his duties under the policy. *Id.* at 22. Kumpf also contended that his property's use as a secondary home raises the bar as to whether the property would be considered unoccupied or vacant, pointing out that his home was fully furnished and always maintained for a stay. *Id.* at 4, 17–20.

Safeco and American responded that the term "unoccupied" should be afforded its ordinary meaning under Fifth Circuit precedent; Kumpf's property was unoccupied according to such meaning; and the absence of a time restriction does not render the term "unoccupied" ambiguous. *Id.* at 15, 17–22, 24. They further argued that their internal documents should not be considered under the parol evidence rule, and even if they were considered, "[t]here is nothing in [their] internal documents that is inconsistent with the construction of the policy, specifically the term 'unoccupied,' as applied to Kumpf's claim." *Id.* at 22–24. As for Kumpf's argument that the

---

[10] Doc #264 at 22; Doc. #263-17 at 11.

[11] Doc. #264 at 21–22; Doc. #263-18 at 28. The training presentation included a slide titled, "Vacancy/Occupancy Discussion" concerning "Differences Between Vacant and Unoccupied and Impact to Coverage" that stated, "Case law from state-to-state can vary in how they interpret vacancy/occupancy." Doc. #263-18 at 28.

property's secondary home status should alter the definition of "unoccupied," they maintained that "[u]nder Kumpf's interpretation, his Oxford house could never be 'unoccupied' because it was a so-called 'vacation home,'" which "would render the term meaningless in contravention of Mississippi law." *Id.* at 21.

Kumpf replied that Safeco and American's parol evidence argument should not be considered as it was raised for the first time in their amended response;[12] and regardless, Safeco's internal documents may be considered because they are not parol evidence as he "does not offer these documents to prove what 'unoccupied means in the Policy'" but rather "to show that any of these definitions could be reasonable interpretations of what 'unoccupied' means;" and even if they were parol evidence, they would be admissible "because neither the plain language of the Policy, nor dictionary definitions resolve the ambiguity of the term 'unoccupied' as used in the relevant context." Doc. #284 at 5–7, 8. Kumpf compared Safeco's multiple definitions of "unoccupied," arguing that the training presentation presents conflicting definitions and that Safeco uses different definitions while underwriting and claim adjusting. *Id.* at 7–9.

Under Mississippi law,[13] the elements of a breach of contract claim are (1) the existence of a valid and binding contract and (2) breach of the contract. *Bus. Commc'ns, Inc. v. Banks*, 90 So. 3d 1221, 1224–25 (Miss. 2012). "An insurance policy is a contract between the insurer and the insured, with the rights and duties set out by the provisions of the insurance policy; as such, an insurance policy is a contract subject to the general rules of contract interpretation." *Renasant*

---

[12] The Court's February 21 order allowing limited discovery specified that "[i]f any party, based on the additional discovery allowed herein, wishes to update its response to another party's pending summary judgment motion … any such updated response and supporting memorandum brief … may not include new exhibits or new arguments not pertaining to the additional discovery allowed herein." Doc. #217 at PageID 6364.

[13] Breach of contract elements are substantive law, so courts apply the law of the forum state in reviewing breach of contract claims. *See Sugg v. Midwestern Univ.*, 105 F.4th 345, 352 (5th Cir. 2024) (analyzing breach of contract claim under Texas breach of contract elements.)

*Bank v. St. Paul Mercury Ins. Co.*, 235 F. Supp. 3d 805, 817 (N.D. Miss. 2017) (citing *ACS Constr. Co. of Miss. v. CGU*, 332 F.3d 885, 888 (5th Cir. 2003)).

Mississippi courts interpret contracts according to a three-step inquiry. *Miss. Comm'n on Environmental Quality v. Bell Utils. of Miss., LLC*, 135 So. 3d 868, 878 (Miss. 2014). First, the court determines if the express wording of the contract is ambiguous. *Id.* Next, if the wording is ambiguous, the court strictly construes the contract in favor of the non-drafting party. *Id.*; *State Farm Mut. Auto. Ins. Co. v. Scitzs*, 394 So. 2d 1371, 1372 (Miss. 1981). Then, if the wording is still ambiguous, the court may consider extrinsic evidence. *Bell Utils.*, 135 So. 3d at 878. "Ambiguity arises when a term or provision is susceptible to more than one reasonable meaning, but can also result from 'internal conflict' between policy provisions that renders uncertain the meaning of the policy as a whole." *Leonard v. Nationwide Mut. Ins. Co.*, 499 F.3d 419, 429 (5th Cir. 2007). "The mere fact that the parties disagree about the meaning of a provision of a contract does not make the contract ambiguous as a matter of law." *Delta Pride Catfish, Inc. v. Home Ins. Co.*, 697 So. 2d 400, 404 (Miss. 1997).

Although Kumpf and Safeco differentiated between "unoccupied" and "vacant," the use of both in the policy exclusion signifies the explicit intent to exclude both statuses from coverage. The parties appeared to agree that the definition of "vacant" applies to unfurnished properties, which the property in question was not. Therefore, the definition of "unoccupied" was the one reviewed for ambiguity.

The parties disagreed whether the meaning of "unoccupied" should be reviewed under the circumstances of a secondary residence. While Kumpf claimed that the secondary residence status renders the definition ambiguous, Safeco and American argued that if Kumpf's interpretation is accepted, a secondary residence could never be considered "unoccupied," so the term would be

rendered meaningless in contravention of Mississippi law.

It is true that, while the term "unoccupied" may be considered unambiguous under one set of circumstances, it could be considered ambiguous under another. *See Gold Coast Commodities, Inc. v. Travelers Cas. and Sur. Co. of Am.*, 96 F.4th 769, 773 (5th Cir. 2024) ( "'[A] policy may be unambiguous, as applied to one set of facts, but may take on characteristics of ambiguity in connection with other facts.'") (quoting *Burton v. State Farm Fire & Cas. Co.*, 533 F.2d 177, 179 (5th Cir. 1976)). However, Kumpf's emphasis on the furnished state of the property was unpersuasive for the purpose of defining the home as occupied.

"Where the insurance policy does not provide the definition for a term or phrase, those words are afforded their ordinary and popular meaning. In determining the ordinary meaning, [the Mississippi Supreme Court] will often consult leading dictionaries." *Anglin v. Gulf Guar. Life Ins. Co.*, 956 So. 2d 853, 860 (Miss. 2007) (cleaned up). This Court previously adopted the definition of "unoccupied" as "without human occupants" and the definition of "occupied" as "to reside in as an owner or tenant," in finding that, given the ordinary meaning of the term "unoccupied," a policy was unambiguous. *Williams v. Allstate Indem. Co.*, No. 4:22-cv-79, 2024 WL 409509, at *4 (N.D. Miss Feb. 2, 2024) (first citing Bryan A. Garner, *A Dictionary of Modern Legal Usage*, 907 (2d ed. 1995); and then citing *occupy*, Merriam-Webster, https://www.merriam-webster.com/dictionary/occupied).

Although Kumpf argued that the circumstances constituting an unoccupied secondary residence should be different from those constituting an unoccupied primary residence, the circumstances offered that would constitute an unoccupied secondary residence must not be so unattainable that the definition of "unoccupied" would be rendered meaningless in contravention of Mississippi law. *See Vigne ex rel. Bias v. Lee*, 491 F. Supp. 3d 200, 204 (S.D. Miss. 2020),

10

*aff'd sub nom. Vigne v. Ohio Sec. Ins. Co.*, 844 F. App'x 742 (5th Cir. 2021) (term is unambiguous when alternative meaning offered would render term meaningless). Kumpf cited an Indiana case, *Carter v. State Farm Fire and Casualty Co.*, which provides that, under Indiana law, policy terms must be construed in the context of the character or class of the insured property. 407 F. Supp. 3d 780, 784 (S.D. Ind. 2019). While Mississippi law demands a fact-specific analysis, it does not contemplate this "character or class" consideration of property. Additionally, the fact-specific analysis did not require the Court to consider parol or extrinsic evidence in the absence of any ambiguity. Applying the ordinary and popular meaning of the term "unoccupied," Kumpf's property was unoccupied because there were no human occupants or residents of the property when the loss occurred. Because the term "unoccupied" is unambiguous as applied to Kumpf's property, summary judgment was not granted in Kumpf's favor based on his argument that the term "unoccupied" is ambiguous.

### 2. Waiver

Kumpf argued that Safeco and American waived the ability to deny coverage under the occupancy/vacancy provision when Stacy Humes procured the policy because Humes' knowledge of the property's inoccupancy was imputed to Safeco and American. Doc. #264 at 23–25. He argued that Humes served as Safeco and American's agent when binding him, and that Safeco and American rely on "independent appointed agents" like Humes "to accurately gather information, quote insurance policies, and underwrite policies." *Id.* at 24–25.

Safeco and American countered that though Humes may have been American's agent for the limited purpose of submitting the application, having the policy issued, and arranging for payment of the premium, the knowledge she acquired as Kumpf's agent was not imputed to American. Doc. #279 at 6. They further argued that "even if the knowledge that no one was living

in the house is imputed to American, that knowledge does not constitute a waiver of the freezing exclusion" because "[t]he fact that Kumpf's house was unoccupied did not affect the coverage on the house."  Doc. #279 at 25.

Kumpf replied that Safeco and American's dual agent argument fails because Humes was their agent "for purposes of binding coverage" and "completing the transaction to obtain the Safeco Policy," so "the knowledge she obtained within the scope of that role is imputed to Safeco."  Doc. #284 at 9, 10 (cleaned up).  According to Kumpf, Humes acted with apparent and actual binding authority, signified by her role generating quotes, her statement that she has "binding authority with carriers," Safeco and American's reliance on independent agents, their lack of oversight of such agents notwithstanding situations requiring review, their cease and desist to Humes and RSC ordering Humes to stop "all actions … imply[ing] that you are an authorized agent of Safeco Insurance," and their acceptance of Kumpf's premium payments.  *Id.* at 11–13.

"General agency law controls the relationship between insurance companies and their agents."  *Leonard v. Nationwide Mut. Ins. Co.*, 499 F.3d 419, 439 (5th Cir. 2007) (citing *Barhonovich v. Am. Nat'l Ins. Co.*, 947 F.2d 775, 777 (5th Cir. 1991)).  In accordance with basic principles of agency law, an insurance agent can bind her principal insurer when the agent acts within her actual or apparent authority.  *Haggans v. State Farm Fire and Cas. Co.*, 803 So. 2d 1249, 1253 (Miss. Ct. App. 2002).  Another basic principle of agency law is that an agent's knowledge is imputed to her principal.  *In re Black Elk Energy Offshore Operations LLC*, 114 F.4th 343, 354 (5th Cir. 2024).  To determine whether Humes' knowledge was imputed to American, it first must be determined whether Humes, a third-party insurance agent, operated as American's agent under the circumstances.  But it is unnecessary to reach this inquiry, because even if Humes' knowledge was imputed to American, issuing the policy with such knowledge did

12

not constitute waiver of the vacancy exclusion.

"Waiver or estoppel cannot operate so as to bring within the coverage of the policy property, or a loss, or a risk, which by the terms of the policy is expressly excepted or otherwise excluded. An insurer may be estopped by its conduct or knowledge from insisting on a forfeiture of a policy, but the coverage or restrictions on the coverage cannot be extended by the doctrines of waiver or estoppel." *King v. Freedom Life Ins. Co. of America*, 486 F. App'x 477, 480–81 (5th Cir. 2012) (quoting *Emp'rs Fire Ins. Co. v. Speed*, 133 So. 2d 627, 629 (Miss. 1961)).

Here, the Safeco Policy contemplated coverage of unoccupied properties by including the reasonable care provision, which specified precautions that must be taken if the property was unoccupied. Even if Humes' knowledge was imputed to Safeco and American, this is not a case where Safeco and American issued a policy knowing that the property was excluded from coverage; rather, Kumpf's property would have been covered had he complied with the reasonable care provision. *See King*, 486 F. App'x at 481 (no waiver because "this is not a case in which the insurer issued or renewed a policy knowing that the insured was, or would for certain in the near future be, in violation of a policy provision"). So, Safeco and American did not waive the vacancy exclusion.

For these reasons, Kumpf's motion for summary judgment on the breach of contract claim was denied.

**V**
**<u>Safeco and American's Motion for Summary Judgment</u>**

In Safeco and American's motion for summary judgment, they sought summary judgment on the claims related to Kumpf's policy and on the extracontractual claims. Both parties largely repeated and expounded on the arguments they used in briefing Kumpf's motion. In addition, they made the arguments cited below, including Safeco and American's argument that Kumpf did not

13

exercise reasonable care in protecting the property's pipes prior to what they characterized as the well anticipated freeze.

### A. Safeco's Involvement

In the briefing for Safeco and American's motion, the parties debated the naming of Safeco as a party. Safeco and American represented that they "are both part of the Safeco Insurance family of companies, but they are separate legal entities," so because "Safeco did not underwrite Kumpf's policy and it was not involved [in] the handling of his claim," Safeco was entitled to summary judgment.[14] Doc. #266 at 4, 16. Kumpf responded that this was a new argument unrelated to the additional discovery, so it violated the Court's February 5 Order only allowing new arguments "pertaining to the limited additional discovery." Doc. #276 at 30–31. Safeco and American replied that it was Kumpf's burden to prove that Safeco was involved in his claim and that he had not sufficiently proven his claim despite frequent conflation of Safeco and American as the same entity; and Kumpf was wrong that they "did not adequately raise the issue." Doc. #289 at 19–20.

Contrary to Kumpf's assertion, the argument that Safeco was not involved in underwriting the Safeco Policy or handling Kumpf's claim was not raised for the first time in Safeco and American's amended motion for summary judgment. In their original motion for summary judgment, Safeco and American specified that they were different entities and "Safeco … did not underwrite Kumpf's policy and it was not involved [in] the handling of his claim." Doc. #162 at

---

[14] Kumpf's complaint alleged that Safeco and American are two separate entities when alleging their citizenship, noting, "Based on representations of Safeco's counsel, American Economy is wholly owned by Safeco Corporation (which also wholly owns … Safeco) and issued the subject Policy." Doc. #46 at 1 n.1. However, to justify his conflation of Safeco and American's alleged acts and omissions, Kumpf claimed that prior to discovery, it was unclear at the time "which actions relevant to this litigation were taken by Safeco and which were taken by American Economy, or both," so "unless otherwise stated, any reference throughout this litigation, in pleadings, briefs, or otherwise, to Safeco encompasses American Economy and *vice versa*." *Id.* (emphasis in original).

14

4.  In his response, Kumpf did not argue that Safeco was involved in the issuance of the Safeco Policy or the denial of his claim, and he introduced no evidence of such.  So, summary judgment was granted in Safeco's favor.

### B.  Breach of Contract

#### 1.  Occupancy

In Safeco and American's motion, they highlighted the fact that no one stayed overnight in the property from the date Kumpf ceased leasing the property to the date of the event.  Doc. #266 at 1.  They argued that neither the fully furnished status of the property nor its former or intended use affected its occupancy status when no one inhabited the property at any point while the policy was in effect.  *Id.* at 6, 8, 12.

Kumpf responded that the exclusion is ambiguous and must be construed liberally and in his favor as the insured, "[s]o, the pertinent question becomes 'what a reasonable person … in [his] position would have understood,'" to which he answered, "to occupy a vacation home means to use it as such—i.e., the 'occasional, temporary occupation expected … of a vacation home.'"  Doc. #276 at 25 (omissions in original).  He also argued Mississippi law requires the Court "to interpret policy exclusions within the context of the underlying facts and circumstances of the case."  *Id.* at 15.

Safeco and American agreed that the Court should construe "unoccupied" under the facts of the case but argued that Kumpf erroneously attempted to characterize the facts as relating to a "secondary residence," a label that Safeco and American described as artificial.  Doc. #289 at 2–3.  They further argued that a property does not have to be "construed with relation to the character or class of property at issue;" they encouraged the Court to adhere to Mississippi rules of construction requiring a court to view a term under its ordinarily accepted meaning.  *Id.* at 16.

15

As explained above, the definition of "unoccupied" was construed according to its ordinary and popular meaning; and Kumpf's property was unoccupied at the time of the loss.

### 2. Reasonable care

Safeco and American argued that Kumpf did not exercise reasonable care, highlighting Kumpf's relative silence on the issue of reasonable care and his deposition statement in which he "admitted he did nothing to increase the heat, drain the pipes, or shut off the water before the date of the loss." Doc. #266 at 4, 15. They noted that the freeze was well-forecast and was broadcast well in advance, that there was no gas usage on the property during the time of the freeze, and that none of the space heaters were operating at the time of the freeze. *Id.* at 1–2, 3, 4.

Kumpf responded that though the inquiry should not reach the question of whether he exercised reasonable care to take such precautions, should the Court reach the question, a genuine issue of fact existed as to whether he exercised reasonable care when considering the weather of previous years. Doc. #276 at 2, 30. Kumpf did not argue that he exercised reasonable care in heating the property or draining its pipes in accordance with the policy, but instead, he argued that the freeze was uncharacteristic for that time of year, that previous low temperatures did not similarly affect the property, that it cannot be reasonably expected that he would have been monitoring local Oxford weather updates, and that Safeco and American cannot prove that the heaters would have prevented the freeze, particularly given the wood material of the home and the home's age. *Id.* at 7, 29–30. Considering these circumstances, Kumpf maintained that the question of reasonable care is one for the jury. *Id.* at 30.

In reply to Kumpf's argument that the uncharacteristic nature of the freeze justified his inaction, Safeco and American argued that Oxford's historical weather data should have guided Kumpf to take precautions in heating the home and draining the pipes, reasoning that the three

similar Christmas freezes occurring in 1963, 1983, and 1989 provided sufficient warning of such weather. Doc. #289 at 8. Further, they argued that Kumpf not only failed to exercise reasonable care but failed to exercise any care at all, noting that he evidently had no plans to "winterize" the property and left only three gas heaters in the property, only one of which had even a pilot light on. *Id.* at 9, 16. Finally, in response to Kumpf's reference to a February 2021 freeze that did not similarly affect the property, they argued that the previous low occurred while tenants were living on the property and heating the home, and that even so, the fact that Kumpf never experienced frozen pipes before is insufficient to prove reasonable care. *Id.* at 9, 17.

Regardless of what Kumpf argued to be mitigating circumstances, he agreed to the imposed standard of care when he bound himself to the terms of the policy. Where, as here, the insured property was unoccupied, the language of the contract imposed a duty to exercise reasonable care in either (a) maintaining heat in the building or (b) shutting off the water supply and draining the system and appliances of water. Kumpf did not argue that he did either, nor did he argue that he exhibited any effort whatsoever to exercise reasonable care. So, the Court's inquiry ends here. Because the property was unoccupied and Kumpf did not exercise reasonable care, he was not entitled to coverage. So, Safeco and American were granted summary judgment on the breach of contract claim, which meant Kumpf's request for a declaratory judgment was not warranted.

### C. Extracontractual Claims

In arguing Kumpf was not entitled to extracontractual damages based on their conduct, Safeco and American contended that American, based on the arguments above, had a legitimate or arguable basis in deciding to deny Kumpf's claim. Doc. #266 at 16. Kumpf highlighted the succinctness of Safeco and American's argument and argued that whether they lacked an arguable or legitimate basis for denying his claim was a fact issue for the jury. Doc. #276 at 32. He justified

17

his position by referencing Safeco's internal understanding of the definition of "unoccupied" and the internal guidelines change redefining "unoccupied" to exclude secondary residences from its interpretation. *Id.* at 33. Kumpf concluded by setting out multiple theories of extracontractual damages relief, including (1) post-claim underwriting based on Safeco and American's insufficient knowledge about the property prior to issuing the policy; (2) gross negligence and breach of the duty of good faith based upon Safeco and American's delayed claim denial; and (3) tortious interference with the ServPro contract. *Id.* at 34–37. As to the ServPro contract, Kumpf represented that Safeco and American recommended ServPro, the construction company handling remediation of the property, and interfered with the contract by telling ServPro to delay the work needed to prevent mold from spreading before eventually denying the claim. *Id.* at 8.

Safeco and American replied that any ambiguity in the definition of "unoccupied" would weigh in their favor as it would provide an arguable basis for the claim's denial. Doc. #289 at 17–18. They argued that Kumpf had no evidence that they committed the requisite willful or malicious wrong or acted with gross and reckless disregard for his rights. *Id.* at 18. In response to Kumpf's claim that they engaged in post-claim underwriting, Safeco and American countered that Kumpf misunderstood the concept of post-claim underwriting. *Id.* They asserted that "Kumpf had a valid policy that covered the dwelling even if it was unoccupied" as long as he took certain precautions against freezing; the vacancy exclusion "was not ground for not issuing the policy;" and although Kumpf's property was ineligible for coverage under American's guidelines for unrelated reasons, American had not attempted to rescind the policy. *Id.* at 18–19. In response to Kumpf's representation that they tortiously interfered with the ServPro contract, they contended that Kumpf misrepresented their role in recommending ServPro; their recommendation that demolition of certain walls be delayed was based on the ongoing investigation; and only Kumpf and Cy Barcus

18

had the authority to delay remediation through their respective roles as homeowner and contractor/ServPro customer.  *Id.* at 9–11.

### 1. Post-claim underwriting

"An insurer has an obligation to its insureds to do its underwriting at the time a policy application is made, not after a claim is filed."  *Lewis v. Equity Nat. Life Ins. Co.*, 637 So. 2d 183, 188 (Miss. 1994).  Insurers "should be estopped from determining whether to accept an insured six months or more after a policy is issued."  *Id.*

Here, underwriting did not occur after Kumpf's claim was filed.  American did not attempt to rescind the Safeco Policy or determine that Kumpf was not covered by the Safeco Policy at all; rather, it determined that his claim was excluded from such coverage.  This was not a case of post-claim underwriting.

### 2. Gross negligence and breach of good faith and fair dealing

"The duty of good faith and fair dealing is implied in the performance and enforcement of all contracts[.]"  *Howard v. CitiFinancial, Inc.*, 195 F. Supp. 2d 811, 824 (S.D. Miss. 2002).  "Under Mississippi law, insurers have a duty to perform a prompt and adequate investigation and make a reasonable, good faith decision based on that investigation and may be liable for punitive damages for denying a claim in bad faith."  *Broussard v. State Farm Fire and Cas. Co.*, 523 F.3d 618, 627 (5th Cir. 2008) (internal quotations omitted) (citations omitted).  To recover punitive damages for bad faith denial of an insurance claim, a plaintiff "must show that the insurer denied the claim (1) without an arguable or legitimate basis, either in fact or law, and (2) with malice or gross negligence in disregard of the insured's rights."  *U.S. Fid. & Guar. Co. v. Wigginton*, 964 F.2d 487, 492 (5th Cir. 1992).  "Punitive damages may not be awarded unless *both* of these prongs are satisfied."  *Mitchell v. State Farm Fire & Cas. Co.*, 954 F.3d 700, 708 (5th Cir. 2020) (citing

19

*Life & Cas. Ins. Co. of Tenn v. Bristow*, 529 So. 2d 620, 622 (Miss. 1988)) (emphasis in original). "The question of whether [the insurer] had an arguable basis for denying the [insured's] claim 'is an issue of law for the court.'" *Broussard,* 523 F.3d at 628 (5th Cir. 2008) (quoting *Wigginton*, 964 F.2d at 492).

Under Mississippi Code § 11-1-65(1)(a), "[p]unitive damages may not be awarded if the claimant does not prove by clear and convincing evidence that the defendant against whom punitive damages are sought acted with actual malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, or committed actual fraud." A party must prove that it is entitled to compensatory damages before the party may recover punitive damages. *Broussard*, 523 F.3d at 628 (citing *Sobley v. S. Nat. Gas Co.*, 302 F.3d 325, 330 (5th Cir. 2002)).

As explained above, American had a legitimate basis for denying Kumpf's claim, so Safeco and American were entitled to summary judgment on Kumpf's gross negligence and breach of good faith and fair dealing claims.

### 3. Tortious interference with contract

To establish a claim of tortious interference with a contract, Kumpf must prove (1) Safeco and American's actions were "intentional and willful;" (2) their actions "were calculated to cause damage to [him] in [his] lawful business;" (3) their actions "were done with the unlawful purpose of causing damage and loss, without right or justifiable cause on [their part] (which constitutes malice);" and (4) "that actual damage and loss resulted." *Neider v. Franklin*, 844 So. 2d 433, 437 (Miss. 2003) (quoting *Par Indus., Inc. v. Target Container Co.*, 708 So. 2d 44, 48 (Miss. 1998)).

A showing of specific intent is not necessary; it can be inferred if Safeco and American knew a contract existed between Kumpf and ServPro[15] but they committed a wrongful act that

---

[15] Although the contract was formed between Barcus and ServPro, Kumpf had a right to bring a claim for tortious interference with contract as the intended third-party beneficiary of the contract. *In re Burzynski*, 989 F.2d 733, 738

20

they were certain or reasonably certain would interfere with the contract between Kumpf and ServPro. *Neider*, 844 So. 2d at 437 (citing *Cranford v. Shelton*, 378 So. 2d 652, 655 (Miss. 1980)). "[T]he interference complained of must be wrongful in order to be actionable and … any interference is not wrongful and actionable if undertaken by someone in the exercise of legitimate interest or right, which constitutes 'privileged interference.'" *Gulf Coast Hospice LLC v. LHC Grp. Inc.*, 273 So. 3d 721, 746 (Miss. 2019) (quoting *Vestal v. Oden*, 500 So. 2d 954, 957 (Miss. 1986)). Although resolution of the claim may have delayed remediation of the property, the resolution period adhered to the insurer's legitimate interest and sole obligation "to perform a prompt and adequate investigation of the claim and to deal with the claimant in good faith." *Liberty Mut. Ins. Co. v. McKneely*, 862 So. 2d 530, 535 (Miss. 2003).

While Kumpf argued American's investigation lacked promptness, the resolution period spanned only from January 2023 to April 2023, and nothing in the record suggested that American was motivated by anything other than the obligation to conduct an adequate investigation by taking approximately two-and-a-half months to do so. So, summary judgment was granted to Safeco and American on the tortious interference with contract claim too.

## VI
## Conclusion

For the reasons above, Kumpf's motion for partial summary judgment [263] was denied, and Safeco and American's motion for summary judgment [265] was granted.

**SO ORDERED**, this 7th day of July, 2026.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**

---

(5th Cir. 1993); *see* Doc. #289 at 11 (citing Doc. #272-3 at PageID 7796) ("[ServPro] later learned Barcus was acting on behalf of Kumpf.").