**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**OXFORD DIVISION**

**RICHARD S. KUMPF**                                          **PLAINTIFF**

**V.**                                                  **NO. 3:24-CV-29-DMB-RP**

**SAFECO INSURANCE COMPANY**
**OF AMERICA; AMERICAN ECONOMY**
**INSURANCE COMPANY; and RSC**
**INSURANCE BROKERAGE, INC.**                              **DEFENDANTS**

**MEMORANDUM OPINION**

Alleging he was wrongfully denied insurance coverage for damage to his home caused by a freeze-related pipe burst, Richard S. Kumpf sued Safeco Insurance Company of America, RSC Insurance Brokerage, Inc., and American Economy Insurance Company. RSC moved for summary judgment on Kumpf's claims against it. This opinion details the reasons why RSC's summary judgment motion was granted.

**I**
**Relevant Procedural History**

On May 30, 2024, Richard S. Kumpf filed an amended complaint in the United States District Court for the Northern District of Mississippi against Safeco Insurance Company of America; American Economy Insurance Company; and RSC Insurance Brokerage, Inc., claiming Safeco wrongfully denied his insurance coverage claim for damage to his home "caused by an unprecedented freeze during the week of Christmas in 2022."[1] Doc. #46 at 1. Of the ten counts in the complaint, only two were alleged against RSC:[2] (1) "Alternative Count IX—Negligence

---

[1] Kumpf filed his original complaint on February 2, 2024, "against Safeco Insurance Company of America … and, alternatively, against RSC." Doc. #1 at 1. Kumpf filed his amended complaint with leave of the Court. Doc. #45.

[2] The other counts are "Count I—Declaratory Judgment Against Safeco;" "Count II—Breach of Contract Against Safeco;" "Count III—Equitable Estoppel Against Safeco;" "Count IV—Waiver Against Safeco;" "Count V—Tortious Interference with Contract Against Safeco;" "Count VI—Negligent Claim Handling Against Safeco;" "Count VII—

Against [RSC];" and (2) "Alternative Count X—Gross Negligence Sufficient to Justify Punitive and Extracontractual Damages Against [RSC]." *Id.* at 24–27.

On December 12, 2024, RSC filed a motion for summary judgment as to Kumpf's alternative claims against it. Doc. #163. On May 16, 2025, Kumpf filed a motion for partial summary judgment, Doc. #263; and American Economy and Safeco together filed a motion for summary judgment as to the claims against them, Doc. #265. On September 30, after these motions were fully briefed, the Court denied Kumpf's motion for partial summary judgment and granted Safeco and American's motion for summary judgment. Doc. #316. The Court also granted RSC's motion for summary judgment. Doc. #317.

## II
## Standard

Under Federal Rule of Civil Procedure 56, "[s]ummary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 896 (5th Cir. 2002) (citing FED. R. CIV. P. 56(c) and *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "A disputed fact is material if it 'might affect the outcome of the suit under the governing law.'" *Allen v. United States Postal Serv.*, 63 F.4th 292, 300 (5th Cir. 2023) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "An issue of material fact is genuine if a reasonable jury could return a verdict for the nonmovant." *Nall v. BNSF Ry. Co.*, 917 F.3d 335, 340 (5th Cir. 2019) (internal quotation mark omitted) (quoting *Sandstad*, 309 F.3d at 896).

In reviewing summary judgment evidence, a court "must draw all reasonable inferences in

---

Gross Negligence Sufficient to Justify Punitive Damages Against Safeco;" "Count VIII—Breach of the Duty of Good Faith and Fair Dealing Sufficient to Justify Extracontractual Damages Against Safeco." Doc. #46 at 15–23.

favor of the nonmoving party, and avoid credibility determinations and weighing of the evidence." *Id*. "A party opposing … a summary judgment motion may not rest upon mere allegations contained in the pleadings, but must set forth and support by summary judgment evidence specific facts showing the existence of a genuine issue for trial." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Anderson*, 477 U.S. at 255–57). Rule 56 "mandates the entry of summary judgment … against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celetox*, 477 U.S. at 322.

### III
### Factual Background

In 2012, Richard Kumpf purchased property in Oxford, Mississippi, for family use. Doc. #163-2 at PageID 3063. Between 2012 and 2022, his four children attended the University of Mississippi and used or inhabited the property at various times. *Id.* After his youngest child graduated, Kumpf leased the property to non-family members and frequently visited the property. *Id.*

Prior to November 5, 2022, the property was covered under a policy Kumpf's insurance broker RSC Insurance Brokerage, Inc., obtained from Chubb ("Chubb Policy"). Doc. #163-3 at PageID 3204–23, 3225–76. The Chubb Policy last renewed on November 5, 2021, providing coverage through November 5, 2022. *Id.* at PageID 3204. On September 7, 2022, RSC account executive Stacy Humes e-mailed Kumpf that the Chubb Policy would not be renewed. Doc. #163-2 at PageID 3075.

On November 5, 2022, a homeowners insurance policy with American Economy Insurance Company ("Safeco Policy"), "a Safeco Company," went into effect regarding the property. Doc. #163-4 at PageID 3278. The Safeco Policy required a $3,109 premium, which Kumpf paid. Doc. #163-2 at PageID 3078. It also had a $5,000 deductible; and provided a dwelling structure

coverage limit of $653,000, a detached structure coverage limit of $65,300, and a personal property coverage limit of $326,500.  Doc. #163-4 at PageID 3285.  Relevant here, the Safeco Policy further provided that it would not cover building property losses caused directly or indirectly by "[f]reezing of a plumbing … system, or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing, while the dwelling is vacant, unoccupied or under construction …."  *Id.* at PageID 3299.  However, "[t]his provision does not apply if [the insured has] used reasonable care to: (a) maintain heat in the building; or (b) shut off the water supply and drain the system and appliances of water."  *Id.*  In the Safeco Policy, American specified that "[i]n reliance on the information you have given us, we will pay claims and provide coverage as described in this policy if you pay your premiums when due, comply with all applicable provisions outlined in this policy, and inform us of any change in title, use, or occupancy of the residence premises."  Doc. #163-4 at PageID 3296 (emphasis omitted).

As of December 2022, the property was not inhabited but Kumpf, his wife, and a caretaker periodically visited and inspected the property.  Doc. #163-2 at PageID 3063.

On December 28, 2022, Kumpf contacted Humes to file a claim, informing her that the day before, a pipe burst in the property's upstairs bathroom due to freezing temperatures, causing water to run for 12 to 24 hours.  Doc. #163-2 at PageID 3180, 3181.  On January 19, 2023, Humes sent Kumpf the application for the Safeco Policy, Kumpf signed the application, and his son returned the signed application to Humes.  *Id.* at PageID 3079.  Humes backdated the application for coverage purposes and told Kumpf that Safeco directed her to do so.  *Id.* at PageID 3079–80.  On February 17, 2023, an underwriter discovered that Humes had been "binding Safeco on risks for the prior five months without an active insurance license."[3]  Doc. #277-2 at PageID 8729.

---

[3] RSC terminated Humes' employment on May 8, 2023.  Doc. #163-8 at PageID 3786.

On April 4, 2023, American informed Kumpf that his "claim for damages to the home, personal property and any additional living expenses [was] denied" based on its findings that the property was "vacant, unoccupied and heat was not being maintained at the time of the pipe burst." Doc. #163-2 at PageID 3200, 3202.

**IV**
**Analysis**

RSC submitted that it was entitled to summary judgment because Kumpf's negligent procurement claim and gross negligence claim fail as a matter of law. Doc. #163 at 2.[4] Kumpf argued RSC's summary judgment motion should be denied because "RSC fails to demonstrate the absence of genuine issues of material fact regarding [his] alternative claims for negligence and gross negligence against it." Doc. #278 at 1. RSC replied that "Kumpf has no negligent procurement claim nor does he have a negligent 'failure-to-advise' claim under the undisputed facts in this case;" rather, "[t]his case is simply a coverage case" and "[n]othing [it] did or did not do had any bearing on Safeco's coverage decision." Doc. #281 at 11, 12.

**A. Negligence**

RSC argued that negligent procurement is the only negligence claim available to Kumpf under Mississippi law and such claim fails because it neither failed to procure coverage for Kumpf's property nor did Kumpf specifically request coverage that it failed to procure; it had no affirmative duty to advise Kumpf regarding his coverage needs, to recommend a policy, to disclose every specific exclusion of a policy, or to assist Kumpf in pursuing coverage for his claim against

---

[4] RSC emphasized that though it "takes no position regarding whether or not there is coverage for the Claim under the [Safeco] Policy," a finding that the claim is covered would entitle it to dismissal with prejudice "on the grounds that said claims would be moot, based on Kumpf's pleadings." Doc. #164 at 13. In the amended complaint, Kumpf repeatedly specifies that the alternative claims against RSC are alleged only "to the extent that coverage for damage to the Property does not exist under the Policy." Doc. #46 at 24–27. Since the Court granted Safeco and American's summary judgment motion as to the claims against them, Doc. #316, concluding that Kumpf's insurance claim was not covered under the Safeco Policy, Doc. #327, Kumpf's alternative claims against RSC were not dismissed as moot.

5

Safeco; and there was no legal or factual basis for Kumpf's claim that it did not involve him in the procurement of the Safeco Policy. Doc. #164 at 5–8, 10–12. RSC further argued that there was no causal link between the denial of Kumpf's claim and Humes' backdating of the application, misrepresentations in the application, and lapse in licensure. *Id.* at 8–10.

Kumpf responded that relief is available to him under a negligent procurement theory because RSC had a duty to exercise reasonable diligence in obtaining a policy conforming to his requests, which it breached by procuring the wrong policy for him when other potentially more suitable coverage options were available, as evidenced by testimony from RSC's corporate representative Carol Wiek and Safeco's underwriting representative Paula Fulcher that a different policy could have provided coverage for his loss; RSC may also be liable for negligent failure to advise because a genuine issue of material fact exists as to whether Humes advised him about his coverage needs, and if so, whether she exercised reasonable care in offering such advice; whether "Humes' misrepresentations, errors, and lack of licensure" caused him damages was a fact issue; and any implied duty-to-read or imputed knowledge doctrine did not apply because the fact that other policies would have better served his needs was not something he could have learned upon further reading of the procured policy. Doc. #278 at 8–14.

RSC replied that Kumpf's negligent procurement claim fails because it did not fail to procure a policy or fail to procure coverage specifically requested by Kumpf; and his argument that it provided him with the wrong policy was not a basis for a negligent procurement claim under Mississippi law. Doc. #281 at 3–4. As to the failure-to-advise claim, it argued that it did not provide Kumpf with the wrong policy because Kumpf repeatedly represented the property as a second home rather than a vacant home; Kumpf misconstrued Wiek's and Fulcher's deposition statements; Fulcher testified that the dwelling fire policy has a vacancy exclusion much like the

6

one in the Safeco Policy; Safeco representative Jobie Ziegler testified that the Safeco Policy would be appropriate for a property in which a homeowner with a separate primary residence plans to stay; Kumpf provided no evidence of a vacancy or dwelling fire policy for which his property would be eligible and which would have provided coverage for his claim; and Kumpf has no evidence that any advice it provided was improper or inaccurate. Doc. #281 at 4–8. RSC further argued that Humes' licensure status is irrelevant; and Humes did not know, nor is there evidence that it knew, that her license had lapsed at the time she procured the Safeco Policy. Doc. #281 at 4–7, 10.

Under Mississippi law,[5] a plaintiff must establish four elements to prevail on a negligence claim: duty, breach, causation, and damages. *Sanderson Farms, Inc. v. McCullough*, 212 So. 3d 69, 76 (Miss. 2017). The parties do not contest the existence of damages.

### 1. Aptness of policy

"Mississippi law recognizes claims for negligent procurement of insurance." *Emerald Coast Finest Produce Co. v. Alterra Am. Ins. Co.*, 864 F.3d 394, 398 (5th Cir. 2017). Under Mississippi law, "[a]n insurance agent owes a duty to his principal to procure insurance policies with reasonable diligence and good faith." *Id.* at 399 (quoting *Taylor Mach. Works, Inc. v. Great Am. Surplus Lines Ins. Co.*, 635 So. 2d 1357, 1362 (Miss. 1994)). "[I]f an insurance agent or broker with a view to being compensated agrees to procure insurance for another and through fault or neglect fails to do so, he will be liable for any damage that results thereby." *Mladineo v. Schmidt*, 52 So. 3d 1154, 1164 (Miss. 2010). "The cases recognizing a claim for negligent failure

---

[5] Mississippi choice-of-law rules dictate that Mississippi substantive law controls. *See Hartford Underwriters Ins. Co. v. Found. Health Servs. Inc.*, 524 F.3d 588, 593, 594 (5th Cir. 2008) (contract law is considered substantive, and Mississippi law gives greater weight to the location of the insured risk than "any other single contact in determining the state of the applicable law provided that the risk can be located, at least principally, in a single state.") (quoting RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 193)). The parties argue the issues under Mississippi law.

7

to procure do so in the context of allegations that 'the agent either failed altogether to procure coverage or the policy procured by the agent did not provide the coverage requested by the insured.'" *Emerald Coast*, 864 F.3d at 399 (quoting *Curry v. State Farm Mut. Auto. Ins. Co.*, 599 F. Supp. 2d 734, 738–39 (S.D. Miss. 2009)). But "contrary to a minority of jurisdictions, [the Mississippi Supreme Court does] not find that insurance agents in Mississippi have an affirmative duty to advise buyers regarding their coverage needs." *Mladineo*, 52 So. 3d at 1163. Though there is no affirmative duty to advise, "if agents do offer advice to insureds, they have a duty to exercise reasonable care in doing so." *Id.* Further, "insurance agents are not 'liable for misrepresentations that could be cured by reading the policy'—only those that 'cannot be cured' by its terms." *Wilson v. Kemper Corp. Servs., Inc.*, 134 F.4th 339, 345 (5th Cir. 2025) (quoting *Est. of Greenwood v. Montpelier US Ins. Co.*, 326 So. 3d 459, 464 (Miss. 2021)) (emphasis omitted).

Kumpf's argument that the Safeco Policy was not the most appropriate policy for his property relates to both his negligent procurement and failure-to-advise theories. In order for Kumpf to prevail on a negligence claim based on such an argument, he would have to show that he requested specific coverage which RSC did not procure, or that RSC advised him regarding his policy options and did not exercise reasonable care in doing so, and that such negligence caused his insurance claim to be denied.

RSC was correct that, in context, Wiek's statement that a different policy may have more aptly served Kumpf's interests was steered by a proposed hypothetical. In response to the question, "Why would you write a vacant home policy and not a secondary residence policy then?," she said, "If the client told me it was vacant and unoccupied, I would write a vacant home policy on that."[6] Doc. #163-8 at PageID 3808. And while Fulcher testified that a policy is chosen according

---

[6] RSC's attorney objected to the hypotheticals on the ground that Wiek was called to testify as a Rule 30(b)(6) representative—not an expert witness. Doc. #163-8 at PageID 3808. RSC noted for the first time in its reply that

to the property's intent, she also testified that a dwelling fire policy would have been the appropriate policy to cover the property but that the dwelling fire policy includes the same vacancy/inoccupancy exclusion as the policy covering the property. Doc. #163-9 at PageID 3986, 3989. Although Kumpf argued Humes did not inform him of his coverage options, she reviewed multiple policy options with him by e-mail, and he opted for the Safeco Policy. Doc. #163-2 at PageID 3168–70.

Because the vacancy exclusion in the Safeco Policy, which was the ultimate reason for the denial of coverage, is also present in the dwelling fire policy, selection of the dwelling fire policy would not have led to a different coverage outcome.[7] And to the extent Kumpf informed Humes his property would be used as a secondary property and argues the property was not vacant,[8] there is no reason in the summary judgment record why RSC would have chosen a vacant property policy.

The parties disagreed about Humes' advice to Kumpf regarding coverage implication for a secondary home and a vacant home. In a March 8, 2023, e-mail, Humes wrote that she "verbally provided Mr. Kumpf with the definition of a secondary home versus a vacant home" and "[h]e confirmed that the Oxford location was furnished and maintained as a secondary home." Doc. #277-3 at PageID 8735. Kumpf maintained that he does not remember ever having such a conversation. Doc. #278 at 11 (citing Doc. #163-2 at PageID 3077).

"Where the insurance policy does not provide the definition for a term or phrase, those words are afforded their ordinary and popular meaning. … In determining the ordinary meaning,

---

"Kumpf did not designate any expert witness who will opine that Humes provided [him] with the 'wrong policy', which is needed to establish what the standard of care is in connection with procuring an insurance policy and how RSC allegedly deviated from this standard." Doc. #281 at 7 n.17.

[7] As RSC noted in its reply, the Chubb Policy previously covering the property also contained a vacancy exclusion like the one in the Safeco Policy. Doc. #281 at 8. n.23; Doc. #163-3 at PageID 3266.

[8] Doc. #46 at 12; Doc. #264 at 3; Doc. #263-1 at PageID 6696.

[the Mississippi Supreme Court] will often consult leading dictionaries." *Anglin v. Gulf Guar. Life Ins. Co.*, 956 So. 2d 853, 860 (Miss. 2007) (cleaned up). In differentiating between "vacant" and "unoccupied, Black's Law Dictionary notes that "[c]ourts have sometimes distinguished *vacant* from *unoccupied*, holding that *vacant* means completely empty while *unoccupied* means not routinely characterized by the presence of human beings." *Vacant*, BLACK'S LAW DICTIONARY (12th ed. 2024) (emphases in original). Kumpf argued at length in briefing the other motions for summary judgment that his home is fully furnished, so it is not completely empty, and therefore not vacant.

So, whether or not the telephone conversation occurred did not matter because since Kumpf's home was not vacant, a vacant home policy would not have been appropriate. And neither of the potentially appropriate policies—secondary home or dwelling fire—would have afforded Kumpf coverage absent his adherence to the reasonable care provision of the vacancy exclusion. For these reasons, Kumpf did not have a viable negligence claim based on his argument that RSC procured the wrong policy for him and failed to advise him that another policy would be more appropriate.

### 2. Pursuit of claim

Though Kumpf contended RSC had a duty to aid him in pursuit of his claim against Safeco and American, Mississippi law does not indicate that an insurance broker's limited scope of duty includes an obligation to pursue a claim against an insurance company, nor did Kumpf provide anything to support such a contention. While the standard of care imposed on an insurance agent is to "use that degree of diligence and care with reference thereto which a reasonably prudent [person] would exercise in the transaction of his own business," *Mladineo*, 52 So. 3d at 1162 (alteration in original), nothing in the record or relevant Mississippi case law suggested that RSC's

10

business extends beyond reasonable diligence and good faith in the *procurement of a policy*—not the pursuit of a claim.  So, RSC did not deviate from its duty in that regard.

### 3.  Humes' licensure and conduct

RSC did not dispute that Humes was not licensed at the time the Safeco Policy went into effect, that she backdated Kumpf's application for the Safeco Policy, and that she included incorrect information regarding the property in the application.  Doc. #164 at 9.  Even if Humes' conduct constituted negligence under Mississippi law, the summary judgment record does not indicate that such conduct caused any damages to Kumpf.  Despite Kumpf's contention that whether Humes' lack of an active license caused him damages is a fact issue, to the extent the claim denial was based on the vacancy exclusion, the outcome would be the same if Humes' license had not lapsed.  And though the application contained incorrect information and was not signed until after the policy went into effect, American treated the Safeco Policy as valid despite these defects, and the summary judgment record did not indicate that the issues with the application played any part in the denial of Kumpf's claim.

### 4.  Summary

For the reasons above, RSC was granted summary judgment on Kumpf's negligence claim.

### B.  Gross Negligence

RSC argued that "Kumpf has no evidence to support any negligence claim against [it];" and "[its] actions in connection with the procurement of the Safeco Policy do not rise to the level of gross negligence, nor is there any evidence of any willful or wanton conduct on [its] part … in connection with the Safeco Policy.".  Doc. #164 at 13.  Kumpf responded that RSC acted with reckless indifference in knowingly allowing Humes to bind not only his policy but a total of sixteen Safeco policies during the period in which her license had lapsed.  Doc. #278 at 16 (citing Doc.

11

#277-2 at PageID 8730). RSC replied that considering the circumstances surrounding Humes'

licensure lapse, the lack of case law supporting a cause of action based on the lapse, and the lack

of a causal link between the licensure issue and Kumpf's alleged damages, the gross negligence

claim does not survive. Doc. #281 at 11.

Under Mississippi Code § 11-1-65(1)(a), "[p]unitive damages may not be awarded if the

claimant does not prove by clear and convincing evidence that the defendant against whom

punitive damages are sought acted with actual malice, gross negligence which evidences a willful,

wanton or reckless disregard for the safety of others, or committed actual fraud." A party must

prove that it is entitled to compensatory damages before it may recover punitive damages.

*Broussard v. State Farm Fire & Cas. Co.*, 523 F.3d 618, 628 (5th Cir. 2008) (citing MISS. CODE

ANN. § 11-1-65(1)(b)–(c) and *Sobley v. S. Nat. Gas Co.*, 302 F.3d 325, 330 (5th Cir. 2002)).

For the same reasons Kumpf's negligence claim failed as discussed above, his gross

negligence claim failed too. Though Humes failed to renew her license, the lack of a causal

connection between that and the denial of Kumpf's claim disqualified Kumpf from recovering

compensatory damages, which meant he is not entitled to punitive damages either. Summary

judgment was properly granted to RSC on Kumpf's gross negligence claim.

**V**
**Conclusion**

For the reasons above, granting RSC's motion for summary judgment on all Kumpf's

claims against RSC was proper.

**SO ORDERED**, this 7th day of July, 2026.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**

12